IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRIS THOMPSON and THOMPSON FARMS, INC., | ) ) ) | Case No. CV-05-44-E-BLW |
| Plaintiffs, | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**INTRODUCTION**

The Court has before it cross-motions for summary judgment filed by the parties. The Court heard argument on August 9, 2005. After reviewing the parties' briefing and considering the arguments of counsel, the Court concludes that (1) the terms of the lease at issue here and the applicable regulations require that the Secretary of Interior approve any sublease, (2) the interpretation of the lease and regulations by the Bureau of Indian Affairs and the Interior Board of Indian Appeals to require that the approval be in writing is inconsistent with the unambiguous language of the lease and regulations, (3) oral approval of the

**Memorandum Decision and Order - 1**

sublease of Lease No. 427 was given by the Secretary's designee, but no approval has been given for the sublease of Lease No. 94-169.  Based upon these conclusions, the Court will grant the Thompson's motion for summary judgment and deny the Department of Interior's cross-motion with regard to Lease No. 427 (Docket No. 9), and will grant the Department of Interior's motion for summary judgment and deny Thompson's cross-motion with regard to Lease No. 94-169. (Docket No. 8).  This decision is more fully explained below.

## BACKGROUND

The Plaintiffs, Chris Thompson and Thompson Farms ("Thompson") have filed the instant action seeking judicial review of the Bureau of Indian Affairs's decision to cancel two leases of Indian trust land.  The Bureau of Indian Affairs canceled the leases on the ground that Thompson illegally subleased portions of the leased land to G-R Farms.  The Interior Board of Indian Appeals ("the Board") affirmed the Bureau of Indian Affairs's decision, concluding that the leases at issue and the pertinent regulations required Thompson to obtain the Secretary's <u>written</u> approval, i.e., that <u>oral</u> approval was insufficient.  Thompson now challenges that decision under the Administrative Procedures Act, 5 U.S.C. §§ 701, et seq.

A.     **Factual Background**

Thompson held leasehold interests in two tracts of adjacent Indian trust land on the Fort Hall Indian Reservation.  The Shoshone-Bannock Tribes ("the Tribes") of the Fort Hall Reservation and the Fort Hall Storage Company were the original parties to the first lease, Lease No. 427, into which they entered in 1966.  The Fort Hall Storage Company subsequently assigned Lease No. 427 to Thompson with the consent of the Tribes and the written approval of the Superintendent of the Bureau of Indian Affairs.  The tract of land that comprises Lease No. 427 is used for three potato storage buildings and appurtenant facilities.  In that lease appear the following provisions governing subleases:

> SUBLEASES AND ASSIGNMENTS.– Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.
>
>      . . . .
>
> SUBLEASING.–Lessee will be granted permission to sublease or assign all or any part of the land in this lease to a third party provided said sublease document is approved by the Superintendent of the Fort Hall Agency and is not in any way inconsistent with the provisions of this contract.

**Memorandum Decision and Order - 3**

About the time Thompson acquired Lease No. 427, Thompson and the

Tribes entered into a separate lease for an adjoining parcel of land.  This lease,

Lease No. 2220, expired in 1984, and the administrative record does not reveal the

status of that parcel from 1984-1994.  However, the parties appear to agree that

both Thompson and G-R Farms used that parcel during this time period.  In 1994,

Thompson and the Tribes entered into, and the Bureau of Indian Affairs approved

Lease No. 94-169 for the same tract of land that comprised Lease No. 2220.  This

tract of land is used for truck unloading, equipment storage, and access to

warehouse facilities.  Lease No. 94-169 contains materially identical subleasing

provisions as Lease No. 427, quoted above.

The events that are the heart of the instant dispute occurred between 1980

and 1990 – after Lease No. 427 was assigned to Thompson and after Lease No.

2220 was executed, but before Lease No. 94-169 was executed.  In 1980,

Thompson and G-R Farms executed an "Agreement to Sell Potato Storage."  The

parties and the Bureau of Indian Affairs have treated this agreement as a sublease,

so the Court will do the same.  Under that sublease, G-R Farms agreed to make

installment payments for the right to use a portion of the land that is part of Lease

No. 427.  Thompson agreed to assign and transfer a one-third interest in the land to

**Memorandum Decision and Order - 4**

G-R Farms upon payment in full.  Although the sublease mentions neither Lease No. 2220 nor Lease No. 94-169, Thompson allowed G-R farms to use land that was part of the land comprising those leases.

Two years after Thompson and G-R Farms executed the sublease, Chris Thompson discussed the sublease with Duane Thompson (no relation), who was then the Superintendent of the Bureau of Indian Affairs's Fort Hall Agency.  The parties and the Interior Board of Indian Appeals assumed that Duane Thompson orally approved the sublease, subject to the condition that G-R Farms comply with the lease terms.  The Court assumes the same.

No one in the Bureau has ever given formal written approval of any sublease between these parties.  However, in 1986, Richard Watt, a partner in G-R Farms, obtained Duane Thompson's written waiver of the Bureau's interest in part of Lease No. 427.  This "Landlord Waiver" was obtained by G-R Farms to allow G-R Farms to obtain a bank loan and borrow against G-R Farms's interest in a potato storage building located on Lease No. 427 land.

G-R Farms continued to use portions of both land tracts for approximately fifteen years.  Neither G-R Farms nor Thompson received any indication from the Bureau of Indian Affairs that the sublease violated the leases.  Then, in 1996, a tribal official expressed concern to the Bureau about subleasing, but when

**Memorandum Decision and Order - 5**

Thompson explained to the Bureau that he had obtained oral approval for the sublease, the matter was dropped.

Finally, in 2001, the Shoshone-Bannock tribes resolved that Lease No. 427 should be canceled and communicated that resolution to the Bureau of Indian Affairs.  Consequently, the Bureau of Indian Affairs conducted an investigation, determined that G-R Farms was using part of both tracts of land without written approval, and began lease termination proceedings.

**B.    Procedural Background**

On September 25, 2001, the Superintendent of the Bureau of Indian Affairs (no longer Duane Thompson) wrote to Thompson, stating that an inspection revealed that Thompson was subleasing parts of Lease Nos. 427 and 94-169 without approval.  Thompson responded that it had obtained oral approval from the former superintendent and was thus not in violation of the lease terms.  An offer to settle the dispute was rejected by the Tribes, and consequently, the Superintendent cancelled both leases on October 30, 2001.  Thompson appealed to the Bureau's Regional director, who affirmed the cancellations.  Finally, Thompson appealed to the Interior Board of Indian Appeals, which again affirmed the cancellations.  That is the decision now under review.

**Memorandum Decision and Order - 6**

**C.     The Interior Board of Indian Appeals's Decision**

As to Lease No. 94-169, the Board found that no BIA official ever approved the sublease, in writing or otherwise, because Duane Thompson's oral approval was given in 1982, some twelve years before Lease No. 94-169 was executed. Lease No. 94-169, according to the Board, was therefore properly canceled.

As to Lease No. 427, the Board's analysis is more complicated.  First, the Board accepted as true that Duane Thompson gave oral approval to the sublease of part of Lease No. 427 in 1982.  The Board further determined that the Landlord Waiver document that Duane Thompson signed did not constitute a written approval of the sublease.

Having thus determined that only oral approval was given as to Lease No. 427, the Board examined the lease language and the relevant regulations to determine whether written approval was required.  The Board conceded that neither Lease No. 427 nor the applicable regulation, 25 C.F.R. § 131.12(a) explicitly required written approval.  Nonetheless, the Board considered the actions of the original lessee, Fort Hall Storage Company, as well as the actions of Thompson, and found that Thompson knew, despite the language of the lease, that written approval was required.

Finally, the Board examined the relevant regulatory provision, 25 C.F.R. §

Memorandum Decision and Order - 7

131.12, in the context of the entire Part and determined that the regulation governing subleases implicitly required written approval because the section governing leases explicitly requires written approval.  Consequently, the Board held that the subleases required written approval and affirmed the cancellation of the leases.

## DISCUSSION

The APA provides for judicial review from final agency decisions, 5 U.S.C. § 704, so long as no other statute precludes review.  Id. at § 701(a)(1).  The Interior Board of Indian Appeals's decision is the final agency decision.  See Anderson v. Babbitt, 230 F.3d 1158, 1164 (9th Cir. 2000) (final decision of the Interior Board of Indian Appeals may be reviewed by district courts).  The Court thus has jurisdiction to review the decision.

## A.     Standard and Scope of Review

When reviewing agency action, "[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985).  Both sides agree that there are no there are factual issues that would preclude summary judgment.  Fed. R. Civ. P. 56(c).

"The Administrative Procedure Act specifies that an agency decision should

**Memorandum Decision and Order - 8**

be overturned only if it is found to be arbitrary, capricious, an abuse of discretion, is otherwise not in accordance with the law, or is unsupported by substantial evidence."  CHW W. Bay v. Thompson, 246 F.3d 1218, 1223 (9th Cir. 2001) (internal quotations and citations omitted).  In addition,

> "[A]n agency's construction of its own regulations is entitled to substantial deference."  When the meaning of regulatory language is ambiguous, the Secretary's interpretation of the regulation controls "so long as it is 'reasonable,' that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations. . . . However, [courts] need not defer to the Secretary's interpretation where an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."

Crown Pac. v. Occupational Safety & Health Review Comm'n, 197 F.3d 1036, 1038 (9th Cir. 1999) (first alteration original) (internal citations omitted).  In conducting this inquiry, courts "take into account common sense, the regulatory purpose and the practical consequences of the suggested interpretations."  Id. at 1040.

Similarly, "if the intent of the parties is clearly expressed in [a contract], that intent must prevail.  If the contractual language is ambiguous, however, [courts]

**Memorandum Decision and Order - 9**

will defer to an agency's reasonable interpretation." <u>Reed v. Railroad Retirement Bd.</u>, 145 F.3d 373, 375 (9th Cir. 1998) (internal citations omitted).

Finally, in reviewing the agency's decision, the Court is limited to a review of the administrative record already in existence.  <u>Camp v. Pitts</u>, 411 U.S. 138 (1973).  The Court may uphold the agency's decision only on grounds relied upon by the agency.  <u>Motor Vehicle Mfrs. Asso. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 50 (1983).

**B.     Lease No. 94-169**

The Court needs not dwell at length on the Board's decision with respect to Lease No. 94-169.  The Board's decision with respect to this lease was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  Whether oral or written approval was required, the Board reasonably determined that Lease No. 94-169 was never approved in any manner.

At the time that Duane Thompson gave his approval, G-R Farms may well have been using part of the land that would later comprise Lease No. 94-169.  It may even be true that approval with respect to Lease No. 2220 was given, though there is virtually no evidence to suggest that fact.  But even assuming that approval was given with respect to Lease No. 2220, the administrative record is silent as to the status of that parcel of land from 1984-1994.  Moreover, the two leases are two

**Memorandum Decision and Order - 10**

separate and distinct contracts, with lease No. 94-169 being solely between the Tribes and Thompson.  The alleged approval of sublease 2200 does not imply the approval of Lease No. 94-169.

Consequently, nothing in the administrative record suggests that a sublease of Lease No. 94-169 was ever approved.  As the Board concluded, the approval of Lease No. 94-169 was a logical impossibility given the sequence of events. Accordingly, the Court concludes that the Board's decision to cancel this lease was appropriate.

## C.      Lease No. 427

The Board's decision with respect to Lease No. 427 is substantially more complicated.  The Court concludes that the Board's decision cannot be upheld because it is contrary to the plain, unambiguous language of the regulation and the lease.

Contrary to the suggestion in the Board's decision, and to the Department of Interior's position here, there is simply nothing ambiguous about the word "approval.[1]  As the Board expressly concluded, the lease contains no explicit

---

[1]  The Court notes that the Board's decision is itself ambiguous.  While seeming to disagree with the contention that the lease terms were ambiguous, the Board nevertheless examined extrinsic evidence to interpret the terms.  In any event, the examination of extrinsic evidence was inappropriate.

**Memorandum Decision and Order - 11**

requirement that approval be in writing.  The Board erred by failing to give effect to the plain meaning of the word and by looking outside that plain meaning to determine that a written requirement was nevertheless intended.

Ordinary contract principles establish that a term is ambiguous "if reasonable people could find its terms susceptible to more than one interpretation." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000).  The parties do not point to, and the Court has not found, any cases that consider whether similar provisions are ambiguous.  The Court is therefore guided by ordinary definitions of the word "approval" and concludes that the term is unambiguous.

Black's Law Dictionary defines "approval" as the giving of "formal sanction to; to confirm authoritatively." (8th ed.).  Similarly, the Oxford English Dictionary defines "approval" as "[t]he action of approving; sanctioning approbation," and Webster's (Third) New World Dictionary states that "approval" means "the act of approving."  No mention of the form in which such approval may come is mentioned in any definition.

The words "written" and "oral" thus are merely adjectives modifying the word.  The fact that the parties disagree as to what form the approval must take does not make the term ambiguous.  See Klamath Water, 204 F.3d at 1210.  To say

**Memorandum Decision and Order - 12**

that the word "approval" is ambiguous because it can come in different forms is like arguing that the word "tea" is ambiguous because it could mean "hot" or "iced," "sweetened" or "unsweetened."  Without those adjectives, the word simply means "tea," in whatever form it may come.  Similarly, "approval," without a modifier, is just that – approval in whatever form it may come.

Had the BIA wanted to change the meaning of the word by adding a specific adjective, it could easily have done so.  Indeed, it did so when it added the word "written" before the word "consent" in the same sentence.  Without any ambiguity in the contract language, the Court owes no deference to the agency's interpretation, but must instead give effect to the clear language in the contract. <u>Reed</u>, 145 F.3d at 375.  The Board should have done the same.  By the terms of the lease, no written approval was required.

Nonetheless, this is only part of the analysis, for the parties to the lease are explicitly bound by the pertinent regulations.  While the specific subsection of the regulation contains identical language to that in the contract, the regulations on the whole provide a more detailed requirement.  However, the same core principle dictate the same result.  The regulations are unambiguous in not requiring any particular type of approval, and any interpretation to the contrary imposes a requirement inconsistent with the plain and unambiguous language of the

**Memorandum Decision and Order - 13**

regulations.

The Department of Interior argues that the Board's interpretation is reasonable because it looks to the context of the regulations to supply a missing term. Specifically it contends that the regulations at issue here, 25 C.F.R. § Part 131 (1966), governed Leasing and Permitting of Indian trust land at the time of the instant lease. Because 25 C.F.R. § 131.5(a) explicitly states that leases in Part 131 are subject to the Secretary's "written approval," the Board reasoned and the Department of Interior urges that subleases, regulated in 25 C.F.R. § 131.12, were also meant to require written approval. However, this argument ignores the fact that the regulations are unambiguous in not requiring any particular type of approval. In the absence of such an ambiguity, the Court need not defer to the Board's interpretation. See Crown Pac., 197 F.3d at 1038.

Nothing in the context of the regulations require a different conclusion. After outlining the types of land and the parties on whose behalf the Secretary may grant leases, the regulations provide for details that may and must be contained in such leases. The first subpart that details lease requirements is section 131.5, which states, "All leases made pursuant to the regulations in this part shall be in the form approved by the Secretary and subject to his written approval." 25 C.F.R. § 131.5(a) (1966). Thus, the regulations are explicit in requiring that the Secretary's

approval of <u>leases</u> must be in writing.

Following section 131.5, Part 131 provides other various regulations including how leases may be negotiated (131.6), requirements for advertisement of leases (131.7), limits on durations of leases (131.8), regulations on land improvements (131.9), a provision for dividing parcels into separate ownerships (131.10), requirements for conservation land management (131.11), requirements for subleasing (131.12), payment of fees for drainage and irrigation (131.13), procedures after a violation of a lease (131.14), and specific rules for certain Indian Reservations (131.15-131.18).  In none of these sections does the word "written" precede the word "approval," although the word "written" does precede other words, such as "notice." <u>See</u> 25 C.F.R. § 131.8 (changes in rental adjustments require "written concurrence of the owners and the <u>approval</u> of the Secretary"); 25 C.F.R. § 131.14 (for violation of lease, "lessee shall be served with written notice").

Specifically, section 131.12, which governs subleases and assignments states "a sublease, assignment, amendment or encumbrance of any lease or permit issued under this part may be made only with the approval of the Secretary and the written consent of all parties to such lease or permit, including the surety or sureties." 25 C.F.R. § 131.5(a) (1966) (emphasis added).  Thus, as the Board

**Memorandum Decision and Order - 15**

conceded, the subpart does not require that the Secretary's approval of a sublease be written.

From the Court's review of the entire regulation, it is clear that the drafter, while requiring that the Secretary's approval of the original lease be in writing, did not conclude that the formality of a written approval was necessary where the lessee was simply sub-leasing to a third party. This distinction is not only dictated by the plain language of the regulation, but is a rational response to a significant legal distinction between a lease and a sub-lease. A lease embodies and defines the lessee's obligations to the lessor. Thus, approval of a lease is of paramount concern to the Department of Interior, given its fiduciary obligation to the lessor. On the other hand, a sub-lease does not modify or discharge the original lessee's obligation to the lessor and, thus, is of less significance to a government agency charged with protecting the interests of the lessor. *See* Restatement (Second) of Property: Landlord and Tenant § 15.1 cmt. i (1976).

Given, the unambiguous language of the regulation, the Court is not bound by, and must reject, the Board's attempt to graft a requirement on the regulation that the Secretary's approval be in writing.

## CONCLUSION

The Board's determination that written approval was required for subleases

was unreasonable and inconsistent with the plain and unambiguous language of the regulations.  Because it is conceded that oral approval was given by Duane Thompson, the Secretary's designee, the Board's decision must be reversed as to the sublease of  Lease No. 427.  However, given the lack of any approval of the sublease of Lease No. 94-169, the Board's decision with regard to that sublease must be affirmed.

## ORDER

In accordance with the memorandum decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the decision of the Interior Board of Indian Appeals affirming the decision of the Bureau of Indian Affairs to cancel Lease No. 94-169 is affirmed.

IT IS HEREBY FURTHER ORDERED that the decision of the Interior Board of Indian Appeals affirming the decision of the Bureau of Indian Affairs canceling Lease No. 427 is reversed.

IT IS HEREBY FURTHER ORDERED that Thompson's motion for summary judgment is granted and the Department of Interior's cross-motion for summary judgment is denied with regard to Lease No. 427 (Docket No. 9), and the Department of Interior's motion for summary judgment is granted and Thompson's cross-motion for summary judgment is denied (Docket No. 8) with regard to Lease

No. 94-169.  A separate judgment will be entered contemporaneously with the

filing of this Memorandum Decision and Order.



DATED:  **September 27, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 18**